UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
RAFAEL B. PERALTA, DOMINGO BAEZ
LOPEZ, JESUS A. PERALTA,

                        Plaintiffs,

           -against-

GARY MATZ, FOOD HAULERS INC.,

                       Defendants.
--------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
22 CV 2422 (OEM) (CLP)

**POLLAK**, United States Magistrate Judge:

On July 30, 2021, plaintiffs Rafael B. Peralta ("Rafael Peralta"), Domingo Baez Lopez ("Lopez"), and Jesus A. Peralta ("Jesus Peralta") (collectively, "plaintiffs") commenced an action against defendant Gary Matz ("Matz") in New York State Supreme Court, Kings County, seeking damages for injuries suffered as a result of a motor vehicle accident that occurred on July 12, 2021 at or near the intersection of Linden Boulevard and East 58th Street in Brooklyn, New York.  (Compl.[1] ¶¶ 1-4, 16, 17-20, 23, 27-30, 33, 38-40, 43).  On April 28, 2022, defendant Matz filed a timely Notice of Removal to this court.  (ECF No. 1).

Currently pending before this Court is defendants' renewed Motion to Amend their Answer, filed on October 2, 2024.  (ECF No. 31).  Also pending before the Court is plaintiffs' request to remand the action to state court, initially filed on November 18, 2024.  (ECF Nos. 40, 51).  For the reasons set forth below, the Court (1) grants defendants' motion to amend and (2) respectfully recommends that the district court deny plaintiffs' motion to consolidate and remand the case back to state court.

---

[1] Citations to "Compl." refer to plaintiffs' state court Complaint filed on July 30, 2021 (ECF No. 1-1).

## PROCEDURAL BACKGROUND

On August 15, 2022, plaintiffs filed an Amended Complaint pursuant to a stipulation of the parties that was So Ordered by the district court, adding Food Haulers Inc. ("Food Haulers"), the owner of the tractor trailer driven by defendant Matz, as an additional defendant in this case. (ECF Nos. 7, 8).  On August 26, 2022, defendants filed an Answer to the Amended Complaint. (ECF No. 9).

On November 3, 2023, defendants moved to amend their Answer to add two new affirmative defenses and a counterclaim for fraud, alleging that defendants have learned through discovery and counsel's investigation that the incident alleged in this case was a "'staged accident,' where the plaintiffs purposefully ran into the defendant's truck to cause the accident." (ECF No. 18 at 1).  The Court denied the motion to amend because defendants failed to file a proposed Amended Answer and Counterclaim detailing the nature of, and the facts underlying, the fraud claim as required by Rule 9(b) of the Federal Rules of Civil Procedure.  (See ECF No. 26 at 10-13).

In renewing their motion, defendants have now provided the Court with a formal Motion to Amend, an Affirmation in Support with supporting documentation, and a redlined, proposed amended Answer with Counterclaims.  (ECF Nos. 29-33).  Counsel for plaintiff Rafael Peralta filed an Affirmation in Opposition to defendants' motion and in support of a cross motion to remand, arguing that the proposed amended Answer fails to meet the threshold necessary to amend the pleadings because defendants' amendments are based on alleged inconsistencies in plaintiffs' deposition testimony and alleged connections among plaintiffs and certain unrelated claimants.  (ECF No. 40 ¶ 3).  Counsel for plaintiffs Lopez and Jesus Peralta also filed an Affirmation in Opposition, which largely mirrors the earlier opposition papers filed by plaintiff Rafael Peralta.  (Compare ECF No. 51, with ECF No. 40).  In analyzing the motions, the Court

2

will primarily utilize the Affirmation filed by counsel for plaintiff Rafael Peralta to address the arguments raised by all plaintiffs.

<u>DISCUSSION</u>

While the Court would typically consider and resolve the originating motion first, plaintiffs' cross motion and objections to defendants' Motion to Amend have raised threshold questions as to the existence of subject matter jurisdiction and whether this case is properly before the federal court.  Thus, the Court finds it appropriate to consider plaintiffs' cross motion first.

I.  <u>Plaintiffs' Cross Motion to Remand and Consolidate</u>

In response to defendants' motion to amend, plaintiffs have cross moved for remand and/or the consolidation of this action with a pending state court action, arguing that diversity jurisdiction would be destroyed upon remand and consolidation.  (<u>See</u> R. Peralta Aff.[2] ¶¶ 17-21).

In opposing plaintiffs' cross motion, defendants argue that the cross motion should not be considered because it fails to comply with the requirements of Local Civil Rule 7.1.  (Defs.' Reply[3] at 2).  Given that 46 days passed between the filing of defendants' motion and when counsel for plaintiff Rafael Peralta filed his Affirmation raising the cross motion, defendants argue that counsel's failure to comply with the Local Rules is inexcusable.  (<u>Id.</u>)  Defendants also oppose the "identical" Affirmation submitted by counsel for plaintiffs Lopez and Jesus Peralta.  (ECF No. 52 at 2).

---

[2] Citations to "R. Peralta Aff." refer to Plaintiff's Affirmation in Opposition to Defendants' Motion to Amend Answer and in Support of Cross Motion to Remand, filed November 18, 2024, on behalf of Rafael Peralta (ECF No. 40).  As noted, counsel for Jesus Peralta and Domingo Lopez filed a separate, nearly identical Affirmation on February 14, 2025.  (ECF No. 51).

[3] Citations to "Defs.' Reply" refer to Defendants' Reply to Plaintiff Rafael Peralta's Motion to Remand and Opposition to Motions to Amend Answer and Re-Open Discovery, filed on December 11, 2024 (ECF No. 45).  Although plaintiffs filed similar Affirmations in opposition, defendants interposed different responses.  (<u>Compare</u> Defs.' Reply, <u>with</u> ECF No. 52).

A.  Legal Standard

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction . . . ." Removal is proper when a case originally filed in state court presents a federal question or where there is diversity of citizenship among the parties and the amount in controversy exceeds $75,000.  See 28 U.S.C. §§ 1331, 1332(a); see also Gurney's Inn Resort & Spa Ltd. v. Benjamin, 743 F. Supp. 2d 117, 119 (E.D.N.Y. 2010) (holding that removal is proper "only if [the case] could have originally been commenced in federal court on either the basis of federal question jurisdiction or diversity jurisdiction" (internal citation and quotation marks omitted)).

Under 28 U.S.C. § 1447(c), a plaintiff may move to remand the action back to state court if the district court lacks subject matter jurisdiction or there is a defect in the removal process. See New York v. International Joint Comm'n, 559 F. Supp. 3d 146, 151 (W.D.N.Y. 2021) (citing LaFarge Coppee v. Venezolana De Cementos, S.A.C.A., 31 F.3d 70, 72 (2d Cir. 1994)). Specifically, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).  The Second Circuit has construed this mandate as authorizing a district court to remand a case sua sponte upon a finding that it lacks subject matter jurisdiction "at any time in the course of litigation."  See Mitskovski v. Buffalo & Fort Erie Pub. Bridge Auth., 435 F.3d 127, 133-34 (2d Cir. 2006) (citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986)).  Thus, if a defendant has improperly removed a case over which the district court lacks subject matter jurisdiction, the district court is required to remand the case back to the state court.

In considering a motion to remand for lack of subject matter jurisdiction, courts look to the complaint without reference to defenses or subsequent amendments.  See Beneficial Nat. Bank v. Anderson, 539 U.S. 1, 6 (2003); Sparta Surgical Corp. v. National Ass'n of Sec. Dealers,

4

Inc., 159 F.3d 1209, 1213 (9th Cir. 1998). Courts "must construe all disputed questions of fact and controlling substantive law in favor of the plaintiff," Marzocchi v. Selective Ins. Co. of New York, No. 14 CV 1026, 2014 WL 2446068, at *1 (E.D.N.Y. May 29, 2014) (internal citation and quotation marks omitted), and "'the burden of persuasion remains upon the removing party.'" Sbarro, Inc. v. Karykous, No. 05 CV 2311, 2005 WL 1541048, at *2 (E.D.N.Y. June 29, 2005) (quoting Nicola Prods. Corp. v. Showart Kitchens, Inc., 682 F. Supp. 171, 173 (E.D.N.Y. 1988)). The removal statutes must be strictly construed against removal with all doubts resolved in favor of remand. See, e.g., In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 488 F.3d 112, 124 (2d Cir. 2007).

   B. Analysis

   In their initial July 30, 2021 Complaint, plaintiffs alleged that on July 12, 2021, a tractor trailer rented and operated by defendant Matz "came in contact" with plaintiffs' vehicle at or near the intersection of Linden Boulevard and East 58th Street in Kings County, New York. (Compl. ¶¶ 10, 14, 16, 17-18). On March 28, 2022, defendant Matz filed a Notice of Removal of the action to this court pursuant to 28 U.S.C. §§ 1332, 1441, alleging diversity of citizenship. (ECF No. 1). Specifically, plaintiffs were all alleged to be citizens of New York, while defendant Matz was alleged to be a citizen of New Jersey. (Id.)

   Pursuant to a stipulation of the parties, which was so Ordered by the district court, plaintiffs filed an Amended Complaint on August 15, 2022, adding a cause of action against Food Haulers, the owner of the tractor trailer, as an additional defendant in this case. (See FAC[4]; ECF No. 8). On August 26, 2022, defendants filed an Answer to the Amended Complaint. (ECF No. 9).

───────────────

[4] Citations to "FAC" refer to plaintiffs' Amended Complaint, filed on August 15, 2022 (ECF No. 7).

On July 12, 2024, while the instant case was pending, plaintiffs Domingo Lopez and Jesus Peralta filed a separate action in New York State Supreme Court, Queens County, against Rafael Peralta, the driver of the plaintiff vehicle in the instant case ("Queens County action"). (Id. ¶ 10).

On October 2, 2024, defendants filed a renewed motion to amend their Answer in this action. (ECF No. 31). While considering defendants' motion, the Court noted that the Amended Complaint alleges that plaintiffs are all New York citizens and defendant Matz is a New Jersey citizen, but that defendant Food Haulers is a New York corporation. (See FAC ¶ 5). Accordingly, this Court entered an Order to Show Cause on April 4, 2025, directing the parties to address whether the Court still had subject matter jurisdiction based on diversity of citizenship. (See Docket Order, dated April 4, 2025). On April 10, 2025, defendants responded to the Court's Order by indicating that plaintiffs' allegation as to Food Haulers' citizenship was inaccurate, and that Food Haulers is a New Jersey corporation with its principal place of business located at 600 York Street, Elizabeth, New Jersey 07207. (See ECF No. 54-2, Ex. B). Thus, since both defendants are New Jersey citizens and plaintiffs are all New York citizens, the case was properly removed pursuant to 28 U.S.C. § 1447(e) and this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.[5]

Nonetheless, plaintiffs now seek to consolidate this case with a pending state court proceeding and remand this case back to state court. (See R. Peralta Aff.; ECF No. 51). Plaintiffs assert that the Queens County action arises from the same July 12, 2021 motor vehicle

---

[5] As noted infra at 7-8, even if Food Haulers was a New York citizen, the Court would still have subject matter jurisdiction because diversity is determined by the citizenship of the parties named in the initial complaint, and not on the citizenship of parties added through subsequent amendments. See, e.g., Bartlett v. Honeywell Int'l Inc., 737 F. App'x 543, 547 (2d Cir. 2018) (holding that diversity jurisdiction existed where complete diversity existed at the time of original complaint's filing and at the time of removal to federal court).

accident at issue in the instant case. (R. Peralta Aff. ¶ 11). Since the two actions arise out of the same accident, plaintiffs ask this Court to remand the instant action to Queens County to be consolidated and tried with the Queens County action, arguing that the proof in each case will be the same and consolidation of these actions will be more efficient for the Court, the attorneys, the witnesses, and the parties. (See id. ¶¶ 16, 17). Plaintiffs further assert that "now since Rafael Peralta [p]laintiff/[d]efendant in both actions, upon consolidation, the complete diversity would be breached Honorable Court [sic] would lack jurisdiction over the instant motion/cross motion." (Id. ¶ 18). Plaintiffs' argument appears to be that since Rafael Peralta is a plaintiff in the instant action and a defendant in the Queens County action, diversity jurisdiction would no longer exist in this case because all parties to the Queens County action are New York residents. (Id. ¶¶ 12, 13).

In addition to counsel's failure to comply with the Local Rules,[6] plaintiffs have failed to demonstrate that remand pursuant to 28 U.S.C. § 1447(c) is appropriate under the circumstances, or that there is any legal authority that would allow the Court to order consolidation of this action with a state court proceeding.

As previously noted, defendants' April 28, 2022 Notice of Removal alleges that plaintiffs are New York residents and defendant Matz, the only named defendant at the time, is a New Jersey resident. (ECF No. 1 ¶ 4). Defendants further alleged that they served plaintiffs with a Demand for Damages pursuant to Section 3017(C) of the New York Civil Practice Law and Rules as well as a proposed Stipulation capping damages at $75,000. (Id. ¶¶ 7, 9). Plaintiffs

---

[6] As noted *supra* at 3, defendants correctly note that plaintiffs' request does not comply with Local Civil Rule 7.1(a)(4), which requires "an opposing party who seeks relief that goes beyond the denial of the motion" to comply with Local Civil Rule 7.1(a)'s general procedures for filing motions. Although plaintiffs' failure to file a Notice of Motion and a separate Memorandum of Law alone would justify a recommendation to deny the cross motion on its own, the Court has considered plaintiffs' arguments on the merits for the sake of efficiency.

were advised that if they did not endorse the Stipulation, defendants would petition for removal to federal court. (Id. ¶ 9). When plaintiffs failed to respond to the Stipulation, defendant Matz timely filed the Notice of Removal, confirming that the parties are completely diverse, and that plaintiffs seek damages in excess of $75,000. (Id. ¶¶ 11-13). See also Cohen v. Werner Co., No. 17 CV 4491, 2017 WL 3327587, at *1 (E.D.N.Y. Aug. 3, 2017) (stating that "the removing party has the burden of establishing that the amount in controversy exceeds the $75,000 jurisdictional threshold mandated by 28 U.S.C. § 1332(a)" (internal citation omitted)).

Plaintiffs did not move to remand the action when it was initially removed to this court, and they have not challenged the existence of diversity jurisdiction until now. By arguing that diversity has been destroyed by the filing of the Queens County action, plaintiffs misconstrue the remand statute and the concept of complete diversity. Subject matter jurisdiction is determined based upon the allegations in the initial Complaint, not on any subsequent actions filed in another court. There has been no evidence presented to the Court to suggest that plaintiffs and defendant Matz were not completely diverse at the time of the filing of the Complaint, nor has there been any suggestion that plaintiffs' combined damages requests are less than $75,000. Furthermore, whether Rafael Peralta is a defendant in the Queens County action has no relevance to a determination of diversity in this action, and no credible basis has been offered to justify remand at this time.

Finally, the Court notes that plaintiffs have not provided any authority to suggest that the court has the authority to order consolidation of the federal and state court actions under these circumstances. (See R. Peralta Aff. ¶ 20). Rule 42 of the Federal Rules of Civil Procedure governs the consolidation of actions pending before the federal court if they involve common questions of law or fact, but nothing in the federal rules provides that a federal court has the

authority to directly order consolidation of a federal action with a state court proceeding.  Given the distinct jurisdictional requirements of each court, the motion lacks merit.

Accordingly, the Court respectfully recommends that the district court deny plaintiffs' motion to remand the instant case and consolidate it with the state court action.

II.    Defendants' Motion to Amend

A.    Defendants' Investigation and Factual Allegations

Turning to defendants' motion to amend their Answer to add a Counterclaim for Fraud, defendants represent that based upon an investigation conducted by Travelers/CSS claims adjuster Mary Fokas, various individuals "connected" to plaintiffs have perpetrated a fraudulent scheme on multiple insurance carriers and on the New York courts, in collusion with a number of medical providers.  (Redlined Am. Ans.[7] ¶¶ 93, 94, 104; see also Fokas Aff.[8] ¶¶ 11, 12, 22, 23, 45-47).  Specifically, defendants allege that plaintiffs are part of a group of individuals who target tractor trailers bearing national or international company logos, intentionally causing accidents by sideswiping or cutting off and stopping short of the commercial tractor trailer, then claiming that preexisting damage to their vehicles had been caused by the collision.  (Redlined Am. Ans. ¶¶ 114-116).  Defendants allege that plaintiffs and their co-conspirators then seek medical treatment for their alleged injuries, exaggerating their injuries, seeking treatment for injuries unrelated to the accident, and claiming treatment that was never actually provided.  (Id. ¶¶ 117-118).  In opposing the motion to amend, plaintiffs argue that the proposed amendments were made in bad faith or for improper purposes, and that they are futile because they fail to meet the heightened pleading standard of Rule 9.  (See R. Peralta Aff. ¶¶ 8-9).

---

[7] Citations to "Redlined Am. Ans." refer to defendants' proposed, redlined Answer to Amended Complaint with Counterclaims, filed as Exhibit M to defendants' motion to amend on October 2, 2024 (ECF No. 31-13).
[8] Citations to "Fokas Aff." refer to the Affirmation of Mary C. Fokas, filed as Exhibit E to defendants' motion to amend on October 2, 2024 (ECF No. 31-5).

As noted *supra*, plaintiffs' Amended Complaint alleges that on July 12, 2021, defendant Metz was operating a tractor trailer that he had rented from defendant Food Haulers when his vehicle "came in contact" with plaintiffs' vehicle at or near the intersection of Linden Boulevard and East 58th Street in Brooklyn, New York.  (FAC ¶¶ 5, 14, 24-28, 43-44).  According to defendants, plaintiffs claimed that defendants "suddenly sideswiped their vehicle as [plaintiffs] were traveling straight."  (Redlined Am. Ans. ¶¶ 95, 96).  However, defendant Matz asserts that he was already in plaintiffs' lane of traffic when plaintiffs suddenly sped up and intentionally struck the tractor trailer.  (Id. ¶ 98).  Defendants assert that there was no dash cam footage of the accident to verify how it had occurred (id. ¶ 99), and they claim that they began an investigation given plaintiffs' "varying version of the accidents [sic]."[9]  (Id. ¶ 101).  Defendants explain that it was not until April 28, 2023 that there was "conclusive evidence indicating that the case was indeed fraudulent[,] sufficient to warrant a counterclaim."  (Id. ¶¶ 101-103).

Specifically, defendants determined that Xiomara Del Carmen Duran ("Xiomara"), Andrelys Duran Matias, Daury Abreu Duran, and Felix Abreu Matia (collectively, the "Xiomara claimants") brought suit, claiming that on April 28, 2023, another commercial truck insured by Travelers/CSS had sideswiped the Xiomara claimants' vehicle when the truck improperly switched lanes.  (Id. ¶ 105).  This truck had dash cam footage showing that a black Honda CRV with Virginia license plate #ULH5186 pulled in front of the tractor trailer and then applied its brakes for no reason.  (Id. ¶ 107(a)).  The dash cam footage also showed a light blue Honda Odyssey minivan with Virginia license plate #ULH5186 pull in front of the tractor trailer, apply its brakes, and engage its hazard lights.  (Id. ¶ 107(c)).  When the driver of the tractor trailer attempted to pass the blue minivan, the minivan came to a complete stop in the middle of the

---

[9] Defendants assert that during their deposition testimony, plaintiffs relayed differing versions of the circumstances surrounding the accident.  (See Redlined Am. Ans. ¶¶ 152-164).

road and angled itself to block both the middle and right lanes, preventing the tractor trailer from passing.  (Id. ¶¶ 107(e),(f)).  Shortly thereafter, a blue Honda CRV and a second unknown sedan arrived on the scene and alleged a sideswipe collision with the blue Honda CRV.  (Id. ¶ 107(g)).

Based on a review of the footage and a subsequent investigation, investigators determined that Virginia license plate #ULH5186, which had been observed on two cars at the scene of the April 28, 2023 accident, was also observed on a vehicle that had been involved in another commercial tractor trailer accident on February 2, 2023.  (Id. ¶ 109(a)).  License plate scanners also revealed that the same Virginia license plate had been observed on three separate vehicles – a light blue Honda Odyssey, a Black Honda CRV, and a Black Honda Accord – each observed at 2557 and 2559 Radcliff Avenue, Bronx, New York 10040.  (Id. ¶ 109(b)).  According to defendants, Travelers/CSS filed a Declaratory Judgment action against the Xiomara claimants in New York State Supreme Court, Westchester County on February 27, 2024.  (Id. ¶ 110).  As of the date of defendants' motion in this case, the Xiomara claimants remained in default.  (Id. ¶ 111).

Further investigation revealed that Xiomara also filed other claims for injuries allegedly incurred in two motor vehicle accidents on April 3, 2019 and January 8, 2021, as well as two trip and fall incidents on February 22, 2020 and September 2, 2020.  (Id. ¶ 124).  Investigators also discovered that Andrelys Duran Matias, a passenger in the April 28, 2023 Xiomara vehicle accident, also filed an insurance claim for an alleged trip and fall accident on May 9, 2021.  (Id. ¶ 125(a)).

More importantly, Adelso Duran ("Adelso"), alleged to be Xiomara's husband, has also filed claims for a trip and fall incident on February 22, 2020, and for an October 14, 2023 motor vehicle accident with a FedEx truck.  (Id. ¶¶ 125(b),(c)).  Xiomara and Adelso resided at 470

Brookside Avenue, Roosevelt, New York 11575.  (Id. ¶¶ 124(d), 125(c)).  Rafael Bourdier also resided at 470 Brookside Avenue and filed a claim related to a trip and fall that occurred only seven (7) days after Adelso filed his trip and fall claim.  (Id. ¶ 126).

Yohanna Ortega was a passenger in the same October 14, 2023 accident with the FedEx truck that allegedly caused injuries to Adelso.  (Id. ¶ 127).  She also filed a trip and fall action on February 22, 2020 – the same day Adelso filed his trip and fall claim.  (Id. ¶ 127(a)).  Yohanna Ortega resides at 85 Harrison Avenue, Freeport, New York with two individuals identified as Joel Ortega Reyes and Erick Baez.  (Id. ¶¶ 127, 128, 129).  Joel Ortega Reyes and Erick Baez both filed insurance claims for alleged 2020 trip and fall incidents in Queens, and Erick Baez also filed suit in Queens County based on an alleged 2019 accident with a UPS truck.  (Id. ¶¶ 128, 129).

Miguel Angel Bonifacio ("Bonifacio") was a passenger in Erick Baez's vehicle at the time of the alleged 2019 accident.  (Id. ¶ 129(a)).  In August 2021, Bonifacio resided at 152 Smith Street, Apt. A14, Freeport, New York 11520, as did Rafael Baez Peralta, a/k/a Rafael B. Bartolo, one of the plaintiffs in the instant case.  (Id. ¶¶ 130, 131).  Both Bonifacio and plaintiff Rafael Peralta are social media friends with Xiomara, and both have filed prior claims for trip and fall incidents.  (Id. ¶¶ 130(a), 131, 139, 140).  Plaintiff Rafael Peralta's wife, Raquel Baez De Peralta ("Raquel"), filed a sidewalk trip and fall suit on July 7, 2016, which was less than 40 days before plaintiff Rafael Peralta's August 16, 2016 trip and fall claim.  (Id. ¶¶ 132, 133).  Raquel, Victor Baez, and Miguel Baez also filed suit based on an August 2, 2022 accident, alleging that their vehicle was sideswiped by a commercial tractor trailer.  (Id. ¶ 134).

Jorbi Peralta is the nephew of plaintiff Rafael Peralta and the son of Jesus Peralta, another plaintiff in the instant action.  (Id. ¶ 135).  Jorbi Peralta filed suit based on a similar November

11, 2022 accident, claiming that the commercial truck driver improperly switched lanes and struck his vehicle.  (Id.)

Finally, defendants allege that the third plaintiff in the instant action pending before this Court – Domingo Baez Lopez -- has a girlfriend named Yanirys Altagracia Nunez De Leon, who was allegedly involved in an August 2, 2023 motor vehicle accident with a passenger named V.G. Baez Rodriguez, a/k/a Victor Geuri Baez Rodriguez.  (Id. ¶¶ 136, 137).  Defendants allege that Victor is connected to plaintiff Rafael Peralta on social media, and that there is reason to believe Victor is the co-plaintiff in the motor vehicle action filed by plaintiff Rafael Peralta's wife, Raquel.  (Id. ¶¶ 137(b), (c)).

Defendants further note that defendant Food Haulers has been sued in two other cases involving alleged sideswipes filed by (1) Jose Castillo, Rodolfo Rodriguez, and Martha Diaz, and (2) Kelvin Ramirez Duran and Maria Bremont Abreu.  (Id. ¶ 138).  Like plaintiff Rafael Peralta, Jose Castillo, Rodolfo Rodriguez, and Maria Bremont Abreu – all allegedly involved in different accidents – are social media friends with Xiomara.  (Id. ¶ 141).

Based on these interpersonal connections and the similarities in their insurance claims, defendants seek to add a Counterclaim for Fraud and Misrepresentation against plaintiffs Lopez, Jesus Peralta, and Rafael Peralta, alleging that they intentionally caused the collision with defendants' tractor trailer to perpetrate a fraud on defendants and their insurance carriers.  (Id. ¶ 147).  Defendants allege that plaintiffs misrepresented the facts surrounding the accident because they were motivated to cause an accident for their own personal gain to obtain insurance proceeds.  (Id. ¶¶ 148-151).  Defendants further allege that plaintiffs materially misrepresented not only the cause of the accident, but also the existence of their injuries and the treatment received.  (Id. ¶ 180).

Defendants claim that plaintiffs purposely misled defendants to prevent defendants from discovering the fraud, pointing to stark discrepancies among plaintiffs' testimony as to how the accident occurred and the area of impact on the truck.  (Id. ¶¶ 152-164).  Specifically, defendants emphasize that passengers Lopez and Jesus Peralta testified that the vehicle was rear-ended, lifted in the air for up to five minutes, and then dragged for 30 to 40 seconds, none of which Rafael Peralta recalled although he was driving the vehicle.  (Id.)  Given the complete lack of similarities across their testimony, defendants claim that this further demonstrates that plaintiffs continue to misrepresent the facts of the accident to obtain money from defendants and their insurance carriers.  (Id.)

Defendants further contend that their biomechanical expert has reviewed plaintiffs' alleged injuries and treatments as well as data from the vehicles involved and concluded that the accident could not have occurred as alleged, nor could it have caused the injuries claimed.  (Id. ¶¶ 165-166, 168-169, 171-172).  At the same time, plaintiffs have not provided any expert reports contradicting defendants' expert report.  (Id. ¶¶ 167, 170, 173).

Defendants allege that plaintiffs intentionally made material misrepresentations as to the accident and their injuries so that defendants would reasonably rely on them and be forced to expend significant funds to resolve or defend the case.  (Id. ¶ 194).  Defendants seek punitive damages "to punish them for their willful fraud and dishonesty and to deter . . . such conduct in the future."  (Id.)

    B.  Legal Standard

Pursuant to Federal Rule of Civil Procedure 15(a)(1), a party may amend "its complaint once as a matter of course within 21 days after serving the [original] complaint or within 21 days after a responsive pleading has been served."  Santagata v. Diaz, No. 17 CV 3053, 2019 WL 2164082, at *2 (E.D.N.Y. May 17, 2019); Blanchard v. Doe, No. 17 CV 6893, 2019 WL

2211079, at *3 (E.D.N.Y. May 22, 2019).  After that, amendments are allowed "only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).

Rule 15 expresses a strong presumption in favor of allowing amendment, stating that "[t]he court should freely give leave when justice so requires."  Id.  While courts have broad discretion in deciding whether to grant motions to amend, the Second Circuit has cautioned that an amendment should be denied only "'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'"  Bensch v. Estate of Umar, 2 F.4th 70, 81 (2d Cir. 2021) (quoting McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007)); see also Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182 (1962) (identifying "repeated failure to cure deficiencies by amendments previously allowed" as an additional ground to deny a motion to amend)).  The party opposing amendment, however, bears the burden of demonstrating good reason to deny the motion.  See Speedfit LLC v. Woodway USA, Inc., No. 13 CV 1276, 2015 WL 6143697, at *3 (E.D.N.Y. Oct. 19, 2015); see also Fariello v. Campbell, 860 F. Supp. 54, 70 (E.D.N.Y. 1994) (citing Panzella v. Skou, 471 F. Supp. 303, 305 (S.D.N.Y. 1979)).

Courts may deny motions to amend where the proposed amendment would be futile as a matter of law.  Such futility is established where the amendment "'would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.'"  Thea v. Kleinhandler, 807 F.3d 492, 496-97 (2d Cir. 2015) (quoting IBEW Loc. Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC, 783 F.3d 383, 389 (2d Cir. 2015)); see also Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc., 889 F. Supp. 2d 453, 459 (S.D.N.Y. 2012) (holding that "[a] proposal to amend a complaint is futile if the proposed amended complaint would fail to state a claim upon which relief could be granted"

(internal citations omitted)).  "[T]he standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss."  IBEW Loc. Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC, 783 F.3d at 389.  As such, a proposed amendment is futile if it does not "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The proposed amendment must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Id.  In making this determination, courts accept all facts alleged by the moving party as true and construe any ambiguities in favor of the moving party. Konrad v. Epley, No. 12 CV 4021, 2013 WL 6200009, at *20 (E.D.N.Y. Nov. 25, 2013); see also DiFolco v. MSNBC Cable, LLC, 622 F.3d 104, 110-11 (2d Cir. 2010).

In seeking to add a claim of fraud, the pleading must state the circumstances constituting the underlying fraud with sufficient particularity to satisfy the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure.  See Berman v. Morgan Keegan & Co., No. 10 CV 5866, 2011 WL 1002683, at *7 (S.D.N.Y. 2011) (observing that Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud . . . ." (internal citations omitted)).  Under New York law, the elements necessary to state a fraud claim include:  "(1) a material misrepresentation or omission of fact; (2) which the [opposing party] knew to be false; (3) which the [opposing party] made with the intent to defraud; (4) upon which the [party] reasonably relied; and (5) which caused injury to the [party]."  Financial Guar. Ins. Co. v. Putnam Advisory Co., LLC, 783 F.3d 395, 402 (2d Cir. 2015).  In order to comply with the particularity requirements of Rule 9(b), the pleading must "(1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent."  Acito v. IMCERA

16

Grp., Inc., 47 F.3d 47, 51 (2d Cir. 1995); see also DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987).  The party alleging a claim of fraud must "plead the factual basis which gives rise to a strong inference of fraudulent intent."  Weaver v. Chrysler Corp., 172 F.R.D. 96, 101 (S.D.N.Y. 1997) (quoting Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990)).

>        C.  Plaintiffs' Arguments

Plaintiffs oppose defendants' motion as futile because defendants have failed to plead their fraud claim with sufficient particularity as required by Rule 9(b).  (R. Peralta Aff. ¶¶ 23-25).  Specifically, plaintiffs contend that defendants' basis for their fraud allegations—the purported inconsistencies in plaintiffs' testimony, the "self-serving affirmation provided by claims professional Mary Fokas about residential and social media connections of multiple claimants and Plaintiffs," and pending, unrelated RICO actions against multiple medical facilities—is insufficient to meet their burden under Rule 9(b).  (Id. ¶¶ 26, 27).  Plaintiffs contend that inconsistencies in testimony do not amount to fraud (id. ¶ 51), and they also criticize the Fokas investigation for failing to take certain steps, such as reviewing defendant Matz's eye doctor records, searching for possible street cameras, and/or determining whether the truck's black box had been removed.  (Id. ¶ 36).  To the extent that defendants have focused on the Xiomara claimants and other individuals allegedly connected to plaintiffs, plaintiffs argue that these individuals are not related to the underlying accident, were not present at the scene, and are not part of the instant litigation.  (Id. ¶¶ 40, 41, 42).

Plaintiffs also argue that defendants fail to specify the time, place, and content of the fraudulent misrepresentations, and that defendants attempt to allege an "intentional scheme" without providing any allegations of particular acts taken by plaintiffs that demonstrate intent.  (Id. ¶¶ 29-31 (citing Shields v. Citytrust Bancorp., 25 F.3d 1124 (2d Cir. 1994))).  Plaintiffs also

challenge defendants' failure to show that they reasonably relied on the alleged misrepresentations, noting that defendants claimed they noticed "red flags" from the outset but proceeded to defend the action. (Id. ¶ 32). Plaintiffs contend that defendants have not "demonstrated that [d]efendants [sic][10] acted with the necessary scienter (intend to deceive)," and they argue that defendants must allege specific facts showing fraudulent intent. (Id. ¶ 33 (citing Shields v. Citytrust Bancorp., 25 F.3d at 1128)).

Furthermore, plaintiffs note that defendant Matz testified that it was a "'little wet and drizzly'" on the date of the accident, he was changing lanes at the time of the accident, and that he wore glasses for distance. (Id. ¶ 46 (citing ECF No. 40-2 at 12, 13, 25)). Plaintiffs argue that the jury must determine how the accident happened, and that defendants are "gaslight[ing] [p]laintiff's legitimate claims" by seeking to add this fraud claim. (Id. ¶ 50). In summary, plaintiffs argue that the proposed amended Answer fails to provide "allegations of fraud . . . specific enough to give defendants [sic] notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." (Id. ¶ 66 (citing Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004))).[11]

D.  Defendants' Response

In response to plaintiffs' argument that defendants have failed to satisfy the particularity requirements of Rule 9(b), defendants contend that their claim is based on plaintiffs'

---

[10] Throughout the Affirmation submitted by plaintiff Rafael Peralta's counsel, there are several instances when the Affirmation inappropriately swaps "defendants" with "plaintiffs," or *vice versa*. Based on context, the Court assumes that in the portion quoted above, plaintiff intended the reference to "defendants" acting with the necessary scienter to refer to plaintiffs' intent to deceive.

[11] Plaintiffs also contend that the unrelated RICO action against various medical providers is not a basis upon which to support defendants' fraud claim, noting that a number of the defendant medical facilities have been released from the action, the action was not filed by Travelers Insurance Company, and defendants are not aggrieved parties entitled to bring such claims. (See id. ¶¶ 68-78).

participation in an "intentional fraudulent scheme to cause accidents against major companies with the hopes of a pay day." (Defs.' Reply at 3). According to defendants, the misrepresentations began with plaintiffs' fraudulent conduct at the scene of the accident: their false allegations that defendants' vehicle collided with their vehicle and their fraudulent claims of injury when they sought medical attention for injuries that did not exist and/or were not caused by the accident. (Id. at 3-4). Defendants argue that plaintiffs' fraudulent conduct continued when they received treatment from doctors for these nonexistent injuries and gave false testimony at their depositions, intentionally misrepresenting the cause of the accident, their injuries, and the treatment they received. (Id. at 4). In essence, defendants' claim of fraud is based on the assertion that every aspect of plaintiffs' Complaint is fraudulent. (Id.)

Defendants further contend that the Fokas Affirmation sets forth specific facts detailing the names of individuals believed to be participating in this overarching fraudulent scheme, their connections to plaintiffs through social media and address history, and similar motor vehicle and trip and fall claims. (Id. at 5). Defendants urge the Court to reject plaintiffs' argument that because the other individuals named in the Fokas Affirmation were not involved in the instant accident, those connections should be ignored as irrelevant. (See id.) Given that the individuals described in the Fokas Affirmation are all alleged to be part of an overarching insurance fraud ring, defendants contend that they have offered more than sufficient evidence to support their fraud claim. (Id.)

    E.  <u>Analysis</u>

Upon consideration of the parties' submissions and the fraud allegations in the proposed Amended Answer, the Court finds that defendants have satisfied their burden under Rule 9. Although troubling, the circumstances surrounding the instant accident, coupled with plaintiffs' wildly divergent recollections of the accident and their referrals to medical providers who have

also been accused of misconduct, would not be enough alone to warrant an amendment adding a fraud counterclaim in this case.  Indeed, it was not until Travelers/CSS investigator Mary Fokas discovered the connections set forth in her Affirmation that defendants had a sufficiently good faith basis to move to amend.

1.   Defendants' Proposed Fraud Counterclaim

In their proposed Amended Answer and Counterclaims, defendants have alleged the elements necessary to state a fraud claim with sufficient particularity:  (1) that each of the plaintiffs have made a material misrepresentation or omission of fact; (2) which they knew to be false; (3) which they made with the intent to defraud; (4) upon which defendants reasonably relied; and (5) which caused injury to the defendants.  See Financial Guar. Ins. Co. v. Putnam Advisory Co., LLC, 783 F.3d at 402.  Defendants allege that each plaintiff made various misrepresentations relating to the cause of the accident at the scene and throughout this litigation, including at their depositions.  (Redlined Am. Ans. ¶¶ 94-98, 101, 114-116).  Defendants also allege that plaintiffs made misrepresentations about the nature and extent of their injuries by exaggerating their injuries and seeking treatment for injuries not caused by the accident.  (Id. ¶¶ 117-119).  Defendants further claim that plaintiffs made misrepresentations and omissions about the treatment they actually received from various medical providers, who are allegedly implicated in various RICO actions involving fraud.  (Id.; see also ECF No. 52 at 2-5).[12]  Thus, the Court finds that defendants have sufficiently alleged the first element of a fraud claim.

Defendants also allege that plaintiffs "knew that their allegations of the accident, the injuries resulting from the accident and any medical treatment they received were false"

---

[12] Although some of the RICO cases have been resolved, defendants note that a number of the medical providers named as participants in these fraudulent schemes treated some, if not all, of the plaintiffs in this case. (See ECF No. 52 at 2-5).

(Redlined Am. Ans. ¶ 120), and they "intentionally omitted the fact that the accident was intentionally caused by them for the purpose of fraudulently obtaining monetary proceeds." (Id. ¶ 121). Thus, defendants have satisfied their burden under Rule 9 to allege the second and third elements of the fraud test – namely that plaintiffs acted with the requisite scienter, knowing their representations to be false with the intent to defraud defendants and their insurance companies. Finally, defendants allege that plaintiffs purposely misled defendants to prevent defendants from discovering the fraud, and that defendants relied upon plaintiffs' material misrepresentations in expending significant sums to defend the instant action. (Id. ¶¶ 190, 191).

The allegations as to plaintiffs' connections with several other individuals involved in similar accidents with similar circumstances who sought medical attention from some of the same medical facilities provide circumstantial evidence from which inferences can be drawn in support of defendants' fraud allegations. At the pleading stage, defendants are only required to allege sufficient factual evidence to support the elements of a Rule 9(b) fraud claim. They are not required to prove the claim at this time. Given the totality of the allegations set out in the proposed Amended Answer, which are supported by witness testimony and the Fokas Affirmation, the Court finds that the proposed amendments are not futile.

### 2. Defendants' Proposed Affirmative Defense of Unclean Hands

Plaintiffs also object to the addition of the proposed affirmative defense of bad faith and unclean hands for reasons similar to their objections to defendants' fraud claim. (See R. Peralta Aff. ¶¶ 79-80). To support an unclean hands defense, plaintiffs argue that the misconduct must "have an *immediate and necessary relation* to the equity the plaintiff seeks." (Id. ¶ 80; ECF No. 51 ¶ 80) (emphasis in original). Plaintiffs allege that defendants' proposed affirmative defense of unclean hands is "with no base and should be denied." (R. Peralta Aff. ¶ 82).

Defendants contend that they have provided sufficient evidence to support an affirmative defense of unclean hands. (Defs.' Reply at 6.) By specifically alleging that the accident was intentionally staged, by highlighting plaintiffs' inconsistent versions of how the accident occurred and their connections with other individuals alleged to be involved in fraudulent claims, and by pointing out that plaintiffs received unnecessary medical treatment, defendants contend that they have more than demonstrated a basis upon which an inference of misconduct could be drawn. (Id.)

As an initial matter, Rule 8(c) of the Federal Rules of Civil Procedure governs the pleading of affirmative defenses and only requires that a defendant "'affirmatively state' an affirmative defense." Sibley v. Choice Hotels Int'l, Inc., 304 F.R.D. 125, 132 (E.D.N.Y. 2015); see also Hon Hai Precision Indus. Co., Ltd., No. 12 CV 7900, 2013 WL 2322675, at *9 (S.D.N.Y. May 28, 2013) (holding that the Twombly pleading standard does not apply to affirmative defenses, but that the lower pleading standard of Rule 8(c) governs. Indeed, in Serby v. First Alert, Inc., the court held that under Rule 8(c), "[t]here is no requirement . . . that a defendant plead any facts at all." 934 F. Supp. 2d 505, 516 (E.D.N.Y. 2013).

The defense of "unclean hands" is generally considered an "alternate designation of a traditional theory of estoppel." Martin v. Nationsbank of Ga., N.A., No. 92 CV 1474, 1993 WL 345606, at *5 (N.D. Ga. Apr. 6, 1993) (citing cases). Given the lesser pleading standard of Rule 8(c) and the factual allegations in the proposed Amended Answer and Counterclaim, there is enough circumstantial evidence from which a plausible inference could be drawn that plaintiffs acted with unclean hands. See 839 Cliffside Ave. LLC v. Deutsche Bank Nat'l Trust Co., No. 15 CV 4516, 2016 WL 5372804, at * 11 (E.D.N.Y. Sept. 26, 2016) (denying motion to strike unclean hands defense where plaintiff commenced new action seeking identical relief to

22

unsuccessful claim in another action); see also City of N.Y. v. FedEx Ground Package Sys., Inc., No. 13 CV 9173, 2017 WL 633445, at *4 (S.D.N.Y. Feb. 14, 2017) (denying motion to strike unclean hands defense because it concerned unresolved issue of fact – namely, what the plaintiff knew and did not know before bringing suit).

Accordingly, plaintiffs' motion to preclude defendants from adding the affirmative defense of unclean hands is denied.

### 3.  Bad Faith, Delay, and Prejudice

Plaintiffs also argue that defendants' motion to amend was filed in bad faith in order "to delay the case, bill insurance company for profit[,] and delay [p]laintiff's day in [c]ourt." (R. Peralta Aff. ¶ 83; see also ECF No. 51 ¶ 83). Plaintiffs allege that defendants are "stalling," and engaging in a "mere fishing expedition to harass [p]laintiffs/members of community [sic] for non-related information . . . ." (R. Peralta Aff. ¶¶ 83, 86).

Plaintiffs also assert that all fact discovery has been completed, including all depositions, which were conducted in September and November 2022. (Id. ¶¶ 91-95). Plaintiffs dispute the defendants' assertion as to the timing of their motion by noting defendants' own acknowledgment of "red flags" early on and arguing that defendants could have asked all pertinent questions at the time of the plaintiffs' depositions. (Id. ¶¶ 97, 100). As a consequence, plaintiffs urge the Court to deny the motion to amend. (Id. ¶ 101).

Defendants deny that they have acted in bad faith by bringing their motion at this time. (Defs.' Reply at 6-7). As set forth in the Fokas Affirmation, the facts underlying this fraud did not come to light until Xiomara Del Carmen Duran's alleged accident in 2023, after which Mary Fokas uncovered the connections detailed in her Affirmation. (Id. at 7). Until that time, none of the connections were known to defendants and defendants were thus unable to add these

allegations to their initial motion to amend; similarly, they had no basis upon which to question plaintiffs about these relationships when their depositions were taken in 2022.  (See id.)

In seeking to reopen discovery, defendants ask to (1) depose plaintiffs on the counterclaim, specifically as to their relationship with Xiomara Del Carmen Duran and the other claimants involved in the fraudulent scheme; (2) conduct additional review of plaintiffs' medical treatment; (3) obtain discovery into plaintiffs' prior accidents; (4) obtain plaintiffs' employment records and depose plaintiffs regarding their inability to work; (5) obtain plaintiffs' no fault files for the alleged accidents; (6) obtain plaintiffs' cellphone records; (7) obtain body camera footage and depose any responding police officers; and (8) obtain responses to defendants' third set of document requests.  (See ECF No. 32 at 14-15).

Having considered the parties' respective arguments, the Court finds no evidence that defendants, in moving to amend at this time, are acting in bad faith or for the improper purpose of delay or to harass the plaintiffs.  The allegations in the proposed Amended Answer and Counterclaim are serious and would be a complete defense to plaintiffs' claims if proven.

<u>CONCLUSION</u>

Accordingly, the Court grants defendants' motion to file their amended Answer with Counterclaims.  The Court also respectfully recommends that plaintiffs' cross-motion to remand and consolidate the case be denied.

As for the issue of reopening discovery, the Court refrains from deciding to what extent discovery should be reopened and the scope of the discovery from either party if reopened until it can hold a conference on the matter.  A conference to address discovery has been set for **<u>October 2, 2025 at 2:15 p.m.</u>**  (See Minute Entry, dated July 25, 2025).

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report.  See 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); <u>see also</u> Fed. R. Civ. P. 6(a) (providing the method

for computing time).  Failure to file objections within the specified time waives the right to

appeal the district court's order.  <u>See, e.g.</u>, <u>Caidor v. Onondaga Cnty.</u>, 517 F.3d 601, 604 (2d Cir.

2008).

      The Clerk is directed to send copies of this Report and Recommendation to the parties

either electronically through the Electronic Case Filing (ECF) system or by mail.

      **SO ORDERED.**

Dated: Brooklyn, New York
       August 4, 2025

                       /s/ Cheryl L. Pollak _____
                       Cheryl L. Pollak
                       United States Magistrate Judge
                       Eastern District of New York